# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DIANA CISSNER,                          :     Case No. 3:16-cv-00121
                                        :
      Plaintiff,                   :
                                        :
                                        :     Magistrate Judge Sharon L. Ovington
vs.                                     :     (by full consent of the parties)
                                        :
                                        :
NANCY A. BERRYHILL,                     :
COMMISSIONER OF THE SOCIAL              :
SECURITY ADMINISTRATION,                :
                                        :
      Defendant.                   :

---

# DECISION AND ENTRY

---

## I.

Plaintiff Diana Cissner asserts here, as she did before the Social Security Administration, that she is eligible to receive Disability Insurance Benefits because she has been under one or more disabilities. Her asserted disabilities—fibromyalgia, depression, anxiety, chronic fatigue, chronic pain, and irritable bowel syndrome— began on March 30, 2012.

She brings the present case challenging the decision issued by Administrative Law Judge (ALJ) Irma J. Flottman, who concluded that Plaintiff was not under a "disability" as defined by the Social Security Act. She asserts that ALJ Flottman erred in four ways:

    1.   by failing to place great weight on her treating physician, Dr. Vyas's opinions;

2. by failing to evaluate Plaintiff's fibromyalgia as required by Social Security Ruling 12-2p, 2012 WL 3104869 (July 25, 2012);

3. by improperly evaluating her credibility; and

4. by presenting inaccurate and unsupported hypothetical questions to the vocational expert.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner finds no error in the ALJ's decision and contends that substantial evidence supports it. The Commissioner therefore asks the Court to affirm the ALJ's non-disability decision.

## II.

Plaintiff's age (fifty-one) at that time, placed her in the category of a person closely approaching advanced age under social security law. She has a high school education without specialized training. Over the years, she worked part time as a bank teller.

Plaintiff testified that she stopped working in March 2012 due to "the stress and the pain. It just increasingly got worse …." (Doc. #5, *PageID* #63). Later, she attempted to work at a veterinarian's office but lasted only two weeks due to stress and pain. She explained, "I get nervous. It makes my pain worse which in turn makes me more tired. I just can't breathe sometimes when I really get stressed. I just have a hard time breathing. Just…, I lose my breath." *Id.* She further explained that it does not take much to trigger her stress.

Plaintiff experiences "bad days" during which she lies on the couch with her feet elevated probably more than seventy-five percent of the day. On "really bad

days" she is up-and-down frequently. *Id*. at 65, 69. She noted, "Just one hurts the other. Up hurts. I've got to sit down. If down hurts, I've got to get up." *Id*. at 65. She estimated that she could either sit or stand for thirty to sixty minutes at a time. Her pain level is an eight and one-half on a one-to-ten pain scale. *Id*. at 69. She uses a heating pad for thirty to sixty minutes, on a good day, and for several hours (on and off) on a bad day. *Id*. at 70. She also experiences crying spells almost daily. *Id*. at 71.

Plaintiff's mornings are always the same—she sits at the kitchen table for hours working "out the pain ...." *Id*. Once those hours pass, she can get moving. On a "decent" day she might be able to dust or do a load of laundry, but fatigue requires her to take rest breaks every hour. It takes her fifteen to twenty minutes of resting to build her energy back up. *Id*. at 66.

The most Plaintiff can comfortably lift and carry is about five pounds. She is able to reach overhead but has limited ability to hold onto items or turn doorknobs. If she needs to hold onto anything for very long, her hands will cramp. When she drives, for instance, she can hold onto the steering wheel for five minutes. After this, she needs to open up her hands. *Id*. at 67. She can hold onto a gallon of milk, but sometimes her "hand will get stuck on it." *Id*. She can pick up small objects and tie her shoes. She can kneel or crouch down but feels pain when doing so. She cooks only easy things and goes to the grocery store about once a week. She does not do yardwork. She can watch an hour-long TV show if she elevates her feet and if her "head is back and relaxed." *Id*. at 69. She does not see any friends and is not involved in any clubs, other than a monthly fibromyalgia meeting. *Id*. at 68.

In a May 2012 function report, Plaintiff reported, "With fibromyalgia, I am in pain every minute of every day…." *Id*. at 219. After she gets up in the morning, it takes her several hours to be able to walk and move around. The degree of her pain and fatigue on any particular day affects her ability to perform typical household chores. *Id*. at 220. Sometimes she stays in her house and does not go out or talk to anyone. *Id*. at 224. Other times she feels trapped and needs to get out of the house.

In a January 2013 disability report, Plaintiff reported that her pain and fatigue had worsened, and her anxiety and depression had increased. *Id*. at 241.

Plaintiff's medical records contain a treatment note in May 2008 indicating that she was feeling "quite tired and weak." *Id*. at 275. She was prescribed Vicodin 500 mg four times daily as needed for pain, Alprazolam .25 mg daily, and Neurontin 300 mg three times daily. *Id*. at 274. Treatment notes beginning as early as May 2008 contain clinical findings including psychomotor slowing, depression, and anxiety. *Id*. at 357, 361, 370, 372, 390, 396, 398, 400, 406, 408, 410, 414. Plaintiff regularly complained of fatigue, malaise, weakness, anxiety, and panic attacks. *See id*.

Plaintiff went to the emergency room in August 2011 for hyperventilation and nausea. She testified that increased stress precipitated this ER visit. *Id*. at 69-70.

Treatment notes from Detmer Mental Health in 2010 and 2011 describe Plaintiff's mood as anxious and her affect as constricted. She was tearful and withdrawn. *Id*. at 328, 336-37.

Plaintiff's long-term treating physician, Dr. Vyas, began treating Plaintiff in September 2004. In June 2012, he completed a questionnaire at the request of the state

agency. *Id*. at 273-74. He reported Plaintiff's diagnoses as "fatigue malaise," insomnia, recurrent moderate major depression, general osteoarthrosis, abdominal pain, and fibromyalgia. He noted that Plaintiff had multiple joint pains, fatigue, and "tearful: depression." She was taking Alprazolam, Neurontin, and Vicodin. Dr. Vyas noted that Plaintiff's response to therapy was "good." When asked to describe her limitations, Dr. Vyas explained that "it's taxing effort…" for her to work a forty-hour week because it causes her "lots of stress," which she has difficulty coping with. *Id*.

In October 2013, Dr. Vyas wrote a letter reporting that Plaintiff suffers from generalized anxiety and depression with poor quality of life. *Id*. at 436. Plaintiff was quite tearful when he last saw her, was reluctant to have epidural injections, and was not a candidate for surgery. Dr. Vyas opined, "this patient is totally disabled from any gainful job or occupation. She has emotional as well as physical shortcomings for any given job." *Id.*

Physician Dr. Danopulos examined Plaintiff in July 2012. *Id.* at 282-90. He identified Plaintiff's objective findings as "1) Aches and pains all over her joints of the upper and lower extremities which were documented only in the left shoulder which showed normal but painful motions. All other joints were normal and painless. 2) history of IBS [irritable bowel syndrome] mostly being constipation…, and 3) history of depression and anxiety…." *Id.* at 285-86. He also generally noted—without identifying any specific limitations in Plaintiff's abilities to sit, stand, lift, carry, walk, etc.—that her "ability to do any work related activities is affected from her aches and

pains all over the joints of the upper and lower extremities which could not be documented except her left shoulder and history of chronic constipation." *Id*. at 286.

Psychologist Dr. Boerger examined Plaintiff in July 2012. *Id*. at 293-99. He diagnosed Plaintiff with major depressive disorder, single episode, severe with psychotic features; and panic disorder without agoraphobia. *Id*. at 297. He observed, "[she] does display symptoms of significant depression and anxiety along with some vague hallucinatory type experiences." *Id*. at 298. Dr. Boerger believed that Plaintiff's "depression and anxiety are likely to limit her ability to tolerate work pressures in a work setting. She had difficulty dealing with stress in both her last 2 employment situations." *Id*. at 299.

Dr. Duritsch, a practitioner of rehabilitative medicine, examined Plaintiff in July and August 2013. *Id*. at 443-53. He assessed Plaintiff with lumbar radiculitis, degenerative disc disease (lumbar), and lumbar facet arthropathy. *Id*. at 445. He noted that the "[m]ajority of her symptoms are consistent with fibromyalgia. However, the radiating leg pain below the level of the knee suggest[s] lumbar radiculitis…." *Id*. He also noted that she "has a positive dural tension sign on the left side with a positive straight leg raise that does not reproduce her symptoms. She may have some L5 or S1 nerve root irritation from the facet arthritis [that] is present on the MRI. Her MRI findings are rather benign on review." *Id*.

Dr. Pylaeva, a state-agency physician, opined in November 2012 that during an eight-hour workday, Plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. Dr. Pylaeva believed that Plaintiff

could, in an eight-hour workday, stand and/or walk for about six hours and sit (with normal breaks) for about six hours.

A state-agency psychologist, Dr. Rivera, opined in November 2012 that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. She had no limitation in her ability to be aware of normal hazards and no limitation in her ability to use public transportation. *Id*. at 102. Dr. Rivera believed that Plaintiff "would be able to work in a setting where duties remain relatively static and changes can be explained." *Id*. at 103.

## III.

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(E). The term "disability" refers to any medically determinable physical or mental impairment that is severe enough to prevent the individual from performing not only his or her past work but any other work ("substantial gainful activity") "which exists in the national economy…." 42 U.S.C. §§ 423(d)(1)(A)-(2)(A); *see Bowen*, 476 U.S. at 469-70.

As indicated previously, it fell to ALJ Flottman to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps described by the Regulations. *See* 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009).

Moving through some initial findings, the ALJ reached steps two and three where she found that Plaintiff's severe impairments—"fibromyalgia, affective

disorder, anxiety disorder, mild degenerative disc disease of the lumbar spine,

osteoarthritis, and insomnia"—did not automatically qualify her for benefits. (Doc.

#5, *PageID* #s 41-44). At step four, the ALJ found that Plaintiff could still perform

the following work:[1]

> [She can] lift up to 20 pounds occasionally and lift or carry up
> to 10 pounds frequently. She can sit, stand, and walk for six hours
> each in an eight-hour workday. She can occasionally climb
> ladders, ropes or scaffolds, ramps, or stairs. She can occasionally
> balance, stoop, kneel, crouch, and crawl. She should avoid all
> exposure to hazards including operational control of moving
> machinery and unprotected heights. She can perform simple,
> routine, repetitive tasks with only occasional changes in the work
> setting. She can perform work that requires only occasional
> interaction with coworkers and the general public.

*Id*. at 44. Plaintiff's limited abilities, according to ALJ Flottman, prevented her from

doing her past work as a part-time bank teller but did not prevent her from performing

a significant number of available jobs, such house cleaner, folder, or assembler. (Doc.

#5, *PageID* #51). This led ALJ Flottman to conclude, in the end, that Plaintiff was not

under a disability and not entitled to benefits. *Id*.

The present review of ALJ Flottman's decision determines whether she applied

the correct legal standards and whether substantial evidence supports her findings.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v.*

*Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If she failed to apply the

correct legal criteria, her decision may be fatally flawed even if the record contains

---

[1] The Social Security Administration refers to what a person can do as his or her "residual functional capacity." *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

substantial evidence supporting her findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## IV.

Plaintiff contends that the ALJ erred by not applying great weight to the opinions of her treating physician, Dr. Vyas.

The treating physician rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014); 20 C.F.R. § 404.1527(c)(2).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The ALJ's review of Dr. Vyas's opinions can be fairly faulted for his disjointed approach. Rather than first discussing and applying the legal criteria applicable under treating physician rule and then, if necessary, applying the remaining factors of the Regulations, the ALJ described Dr. Vyas's February 2012 treatment notes and then discussed the opinions and information Dr. Vyas provided in the February 2012 questionnaire. Doing so, the ALJ intermixed various reasons for placing "limited weight" on Dr. Vyas's opinion that "it's taxing effort…" for [Plaintiff] to work a forty-hour week because it causes her "lots of stress," which she has difficulty coping with. (Doc. #5, *PageID* #46). The ALJ placed "greater weight" on Dr.Vyas's statement "that Neurontin and Vicodin were effective in treating the claimant's pain, as this was presumably based on claimant's own statement of perceived relief with medication." *Id*. The ALJ continued her disjointed evaluation of Dr. Vyas's opinions by waiting until later in her decision to describe the legal criteria applicable under treating physician rule, to find that Dr. Vyas "appears to be a treating source," and to decline to place controlling weight on Dr. Vyas's opinions. *Id*. at 48-49.

This disjointed approach might well, in a different case, lead an ALJ astray of the "good reasons" requirement and might well, in a different case, lead an ALJ to fail to apply the correct legal criteria or fall short of relying on substantial supporting evidence. In the present case, however, the ALJ's decision contains good reasons for declining to assign controlling weight, and instead assigning little weight, to Dr.

Vyas's February 2012 opinion that Plaintiff's inability to tolerate work stress prevented her (or at least taxed her ability) working a forty-hour-a-week job. The ALJ reasoned that Dr. Vyas "did not see the claimant frequently and did not appear to be providing treatment for her depression, which he identified as a significant condition both in progress notes and on the [February 2012] form." *Id*. The ALJ further recognized that Dr. Vyas was unlikely to have information about Plaintiff's ability to work forty hours a week, as she had worked only twenty hours a week since 1980. These conclusions are reasonable given the frequency—typically twice a year—of Plaintiff's treatment visits with Dr. Vyas.

Plaintiff contends otherwise based on her five (at least) treatment visits with Dr. Vyas in 2013 alone. A review of the medical records Plaintiff cites shows that she saw Dr. Vyas multiple times in January 2013 with each visit concerning new medication side effects. *Id*. at 357-68. Because this evidence shows repeated visits around the same time for the same problems, it does not establish that Dr. Vyas regularly saw Plaintiff more often than twice a year, particularly when Plaintiff testified that she saw her physician (referring to Dr. Vyas) every six months. *Id*. at 64.

The ALJ also observed that Dr. Vyas did not appear to write diagnoses and symptoms listed in the February 2012 questionnaire and instead identified only "subjective, not objective, findings" in support of his opinion. *Id*. at 467. Dr. Vyas's answers in the February 2012 questionnaire confirm this. When asked for "all pertinent findings on clinical examination…," Dr. Vyas merely identified subjective symptoms, including multiple joint pains, fatigue, and "tearful depressed." *Id*. at 273.

Dr. Vyas, moreover, described Plaintiff's response to prescribed therapy as "good" without providing any meaningful information in support. And, except for pointing to Plaintiff's difficulty coping with stress, Dr. Vyas left unexplained his opinion that it is a "taxing effort" for her to work a forty-hour workweek. *Id*. at 274. Indeed, Dr. Vyas's February 2012 questionnaire provides no significant supporting explanation and no reference to particular evidence. These are valid grounds for placing little weight on his opinion. *See White v. Comm'r of Soc. Sec*., 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."); *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ also did not err in assigning no significant weight to Dr. Vyas's October 2013 opinion that Plaintiff was "totally disabled" because she "has emotional as well as physical shortcomings for any given job." (Doc. #5, *PageID* #s 48-49, 436). The ALJ observed that Dr. Vyas did not provide sufficient clinical and laboratory data to support his conclusion. This, again, is a valid reason for discounting Dr. Vyas's opinions. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *see also Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").

The ALJ also determined that Dr. Vyas did not "provide a detailed function-by-function analysis that demonstrates the inability to perform any type of gainful activity." (Doc. #5, *PageID* #49). The Regulation that sets the criteria for weighing medical source opinions, does not specifically mention as a factor whether the physician performed a detailed function-by-function analysis. 20 C.F.R. § 404.1527(c). Yet, where Dr. Vyas expressed the opinion that Plaintiff was "totally disabled," Dr. Vyas's failure to mention Plaintiff's specific limitations or his failure to perform a function-by-function analysis left his total-disability opinion unexplained and unsupported. The ALJ, moreover, was not required by Regulation to accept Dr. Vyas's disability opinion because, under social security law, a treating source's opinion by itself is not conclusive on the issue of whether the claimant was under a disability. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1527(d)(1).

Plaintiff maintains that it was "disingenuous" for the ALJ to discredit Dr. Vyas's opinions for the reason that he did not see Plaintiff frequently, while Dr. Boerger, upon whom the ALJ relied, only saw Plaintiff once. This argument falls short because Plaintiff has not shown error in the ALJ's weighing of both Dr. Vyas's and Dr. Boerger's opinions. Dr. Vyas's opinions were not significantly probative for several reasons, discussed above, apart from the fact that he had not frequently seen Plaintiff. The ALJ also found Dr. Boerger's opinion consistent with the evidence. (Doc. #5, *PageID* #s 47-48). The ALJ simply considered the fact that Dr. Vyas had not treated Plaintiff frequently as an additional factor that weighed against his opinion,

which social security law permits.  *See* 20 C.F.R. § 404.1527(c)(2)(i) ("the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

Lastly, although Defendant does not specifically advance the position that any error in the ALJ's weighing of Dr. Vyas's opinions was harmless, it is worth considering in light of the ALJ's disjointed analysis.  Assuming, in Plaintiff's favor, that the ALJ erred by not weighing Dr. Vyas's opinions as the Regulations, Rulings, and case law require, the errors were harmless.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (discussing *Wilson*, 378 F.3d at 546-47).  Dr. Vyas's reference to "taxing effort," when read in the context of his February 2012 opinion, did not provide insight into Plaintiff's limitations or abilities.  Dr. Vyas's October 2013 disability opinions are conclusory, lacking both supporting explanation and reference to specific medical evidence.  At both times, Dr. Vyas's mention of Plaintiff's diagnoses, and the other information Dr. Vyas provided, was bereft of any meaningful explanation or reference to supporting evidence.  Indeed, his opinions were so "patently deficient, the Commissioner could not possibly credit [them]."  *Wilson*, 378 F.3d at 547. Additionally, the ALJ's detailed consideration of Dr. Vyas's opinions, although disjointed, met the "procedural safeguard of reasons…," even if she did not strictly comply with the terms of the Regulations.  *Id*.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. Vyas's opinions lack merit.

\* \* \*

Plaintiff next turns to what she argues was the ALJ's failure to evaluate Plaintiff's fibromyalgia as Soc. Sec. R. 12-2p, 2012 WL 3104869 (July 25, 2012) requires. Plaintiff reasons that the ALJ failed to consider the longitudinal record, which was needed because fibromyalgia symptoms can wax and wane over time and may cause a person to have bad days and good days.

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). An ALJ's credibility findings "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*. (citations omitted).

Contrary to Plaintiff's contentions, the ALJ conducted a detailed review of the pertinent evidence in the record, including the evidence from February 2012, the month before her asserted disability onset date, and the evidence continuing in the years after. (Doc. #5, *PageID* #s 46-50). The ALJ's assessment of Plaintiff's residual functional capacity is informative. The ALJ noted, for example:

> The claimant uses narcotics and Neurontin daily for complaints of generalized joint pain, but is able to shop in stores, drive a car, and perform activities of daily living. She does not see a rheumatologist for her fibromyalgia, which is treated by a primary care doctor who prescribes no medication other than for pain relief for this condition. He does not even list fibromyalgia as a diagnosis for which he is treating her, although it was once listed on a disability form, apparently by his office staff, as a condition that was diagnosed in 2010. The frequency and type of treatment that the claimant has received is not consistent with her allegations of disabling impairments….

*Id.* at 50 (internal citations omitted). The only part of this analysis that Plaintiff directly challenges is the ALJ's statement that Dr. Vyas prescribed no medication other than for pain relief. Plaintiff points out that Dr. Vyas prescribed her Neurontin, which Plaintiff explains is not a benzodiazepine or narcotic pain medicine. Plaintiff is correct as far as she goes—Neurontin is an anti-seizure medication. But, it is also prescribed to treat chronic pain. *See* http://www.mayoclinic.org/diseases-conditions/fibromyalgia (search: "Fibromyalgia treatment: Is Neurontin effective?). It was therefore reasonable for the ALJ to conclude that Dr. Vyas treated Plaintiff's fibromyalgia pain with, in part, Neurontin.

Plaintiff also points out that Dr. Vyas's treatment notes document, as early as May 2008, physical examination findings of psychomotor slowing, depression, and anxiety. A review of the records Plaintiff cites confirms the present of these findings. (Doc. #7, *PageID* # 478 (citing Doc. #5, *PageID* #s 361, 370, 372, 390, 396, 398, 400, 406)). Yet, the presence of these findings tends to show at most that Plaintiff indeed suffers from fibromyalgia as the ALJ found at step 2 of her sequential evaluation. *See* Doc. #5, *PageID* #s 41-43. These records, however, provide little, if any, meaningful insight into Plaintiff's levels of pain, whether her pain waxes and wanes over time, and how her pain and fibromyalgia impacts her. *See id.* at 361, 370, 372, 390, 396, 398, 400, 406. Such evidence, therefore, says little about the credibility of Plaintiff's descriptions of her pain.

Additionally, Plaintiff challenges the ALJ's credibility assessment by relying on her subjective reports to doctors. No doctor of record has said that she is disabled based on her fibromyalgia and no doctor has reported the details of trigger-point testing he or she performed.[2] And, even if some evidence in the record supports her credibility, there was other substantial evidence supporting the ALJ's credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (ALJ's finding is sufficient, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."). This substantial evidence consists of Dr. Danopulos's examination. He documented essentially normal findings with no pain on motion in Plaintiff's joints, except her left shoulder. *See* Doc. #5, *PageID* #s 47, 284. Plaintiff herself has denied any joint or muscle pain on several occasions. *See*, *e.g.*, *PageID* #s 358, 418, 423. This is not consistent with her testimony about her decent days because she did not testify she lacked joint pain during her decent days. She instead explained that during decent days she had continuing and significant difficulty with pain and fatigue. *See id*. at 65-66. Inconsistencies like this are valid reasons for discounting Plaintiff's credibility. *See* Soc. Sec. R. 96-7p, *5 (July 2, 1996)[3] ("One

---

[2] Dr. Vyas's October 2013 letter does not list fibromyalgia as a basis for his disability opinion. (Doc. #5, *PageID* #436). Dr. Vyas's February 2012 questionnaire answers do, but—as the ALJ recognized—the doctor does not appear to have written that section of the form. *See id*. at 46, 50. And, as found above, Dr. Vyas's February 2012 form does not conclusively support a finding of disability.

[3] Soc. Sec. R. 96-7p has been superseded by Soc. Sec. R. 16-3p, which became effective on March 28, 2016. Yet, because the ALJ's decision predated March 28, 2016, Soc. Sec. R. 96-

strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Plaintiff further contends that the ALJ credited Dr. Boerger's opinions but disregarded the substance of Dr. Boerger's opinion.  Yet, in support of this contention, Plaintiff refers mainly to her subjective statements to Dr. Boerger rather than to the substance of Dr. Boerger's findings or opinions about Plaintiff's work limitations.  *See* Doc. #7, *PageID* #s 480-81.

Next, Plaintiff faults the ALJ for considering that her "several part-time jobs do suggest functional capacities that far exceed the extreme limitations alleged by claimant in her testimony and in reports of her symptoms and limitations filed with the SSA."  (Doc. #5, *PageID* #41).  Plaintiff points out that she only held two part-time jobs during the period she alleged disability and that she performed one of them for less than two weeks.  "More importantly," Plaintiff reasons, she performed these jobs two years before her administrative hearing where she testified that her condition had deteriorated.  (Doc. #7, *PageID* #481).  These contentions fail to show error or lack of substantial evidence in the ALJ's credibility findings.  In contrast to Plaintiff's deterioration testimony, Plaintiff's medical records indicate that she "continues to suffer [the] *same symptoms at least for the last 10 years and hasn't changed a bit at*

---

7p applies.  *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016) ("It is well-established that, absent explicit language to the contrary, administrative rules do not apply retroactively.") (internal citation omitted).

*all*." (Doc.#5, *PageID* #440 (emphasis added)). And, one of the two part-time jobs she held after her alleged onset date was the same job at the bank that she had been doing for more than thirty years. *See id*. at 188-89, 295. This reasonably tends to show that she was able to maintain part-time employment in a manner inconsistent with her hearing testimony. The ALJ, therefore, did not err by considering Plaintiff's part-time jobs.

Plaintiff also argues that "the record reflects a multitude of treatment for [her] alleged impairments," so the ALJ was incorrect in relying on her failure to seek treatment. (Doc. #7, *PageID* #s 481-82). She overlooks, however, that the ALJ relied on the fact that she "has not sought *mental* health care during the period under consideration, despite having medical insurance, except for medication prescribed by the primary care physician she sees twice a year." (Doc. #5, *PageID* #49) (emphasis added). It was reasonable for the ALJ to observe—as part of her credibility assessment—that Plaintiff did not seek mental-health treatment (except for medication from Dr. Vyas). This is because Plaintiff had medical insurance and because her failure to seek mental-health treatment was one among many reasons the ALJ used discounted her credibility. And, the ALJ did not use this as the determinative credibility factor. *See Blankenship v. Bowen*,874 F.2d 1116, 1124 (6th Cir. 1989) (lack of psychiatric treatment "should not be a determinative factor in the credibility assessment."); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness. However, in this case, there is no evidence

suggesting that Claimant's mental condition somehow hindered him from seeking examination or treatment." (citation omitted)); 20 C.F.R. § 404.1529(c)(3)(v) (factors relevant to evaluation of a claimant's symptoms include treatment other than medication the claimant has received for relief of symptoms).

Plaintiff maintains that the ALJ was wrong to find no objective support for her allegations of irritable bowel syndrome (IBS) symptoms because a 2005 gastroenterology consultation and colonoscopy supported this diagnosis. But the 2005 consultation and colonoscopy she cites preceded her alleged onset date of March 2012 by about seven years. The ALJ, moreover, was correct when she wrote that "there is no objective support for this [IBS] diagnosis, such as colonoscopy or abdominal ultrasound, *during the period at issue*." (Doc. #5, *PageID* #s 49-50 (emphasis added)). Plaintiff also does not acknowledge the remaining part of the ALJ's analysis where she states that "there is no evidence of bowel irregularities that might cause functional limitations." *Id*. at 50. Regardless of any past diagnosis, the fact that there is no evidence that IBS affected Plaintiff during the period at issue reasonably undermines her credibility.

Plaintiff also faults the ALJ for saying that she did not exhibit positive results on a straight leg-raising test; Plaintiff says that she did. Again, she does not fully cite the ALJ's decision. In full, the ALJ wrote: "[t]he evidence does not show a positive straight leg-raising test, *which reproduces radicular symptoms rather than merely back pain, in both seated and supine positions*." *Id*. at 42 (emphasis added)). And, in fact, the positive straight-leg-raising test from Dr. Duritsch that Plaintiff cites was

accompanied by the doctor's statement that she "has no active radiculopathy." *Id*. at 445.

Lastly, Plaintiff claims that she accurately described her weight gain, and the ALJ was wrong to find otherwise. But, the ALJ's statement was accurate. The ALJ noted that in July 2013, nine months before the March 2014 hearing, Plaintiff weighed 112 pounds. *Id*. at 49, 441. In contrast, Plaintiff testified at the hearing that she had gained twenty pounds in the past nine months and now weighed 119 pounds (weight gain of seven pounds). *Id.* at 62. Plaintiff contends that she did gain twenty pounds between January 2013 and January 2014. But that is not what the ALJ asked her. The ALJ asked her how much weight she had gained in the hearing. *Id*. at 62. Her response exaggerated her weight gain and was inaccurate.

In sum, Plaintiff has not identified any error in the ALJ's analysis of her subjective complaints. The ALJ relied on substantial medical and other evidence to find that Plaintiff was not entirely credible. Great deference must therefore be given to the ALJ's credibility findings. *See Walters,* 127 F.3d at 531.

\* \* \*

Plaintiff's remaining argument concerns the ALJ's hypothetical question to the vocational expert. She asserts that the ALJ did not include all the limitations described in her assessment of Plaintiff's residual functional capacity, or the limitations found by the state agency psychologists. The Commissioner concedes the ALJ's findings restricted her to simple, routine and repetitive tasks, and occasional kneeling and

crawling, but the ALJ did not fully incorporate these limitations in the hypothetical to the vocational expert. This error, however, was harmless.

The jobs the vocational expert identified, and that the ALJ relied on—housekeeping cleaner, folder, and assembler—are all unskilled jobs. As unskilled jobs they account for the limitation to simple, routine, and repetitive tasks that the ALJ found. *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. 2000) (equating limitation to simple, repetitive, and routine tasks with unskilled work); *see also* Soc. Sec. R. 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive remunerative unskilled work include the abilities ... to understand, carry out and remember *simple* instructions....") (emphasis added). The Commissioner, moreover, correctly points out that none of the jobs require more than occasional kneeling or crawling, *see* Dictionary of Occupational Titles §§ 323.687-014, 369.687-018, 780.684-010, so they would also fit well within the ALJ's assessment of Plaintiff's residual functional capacity. Indeed, as a general matter, limitations in a claimant's ability to kneel and/or crawl have little impact on her ability to work. Soc. Sec. R. 85-15, 1985 WL 56857, at *7 ("crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling").

Plaintiff's argument that the ALJ did not fully incorporate the findings of the state agency psychologists, Drs. Lewin and Rivera, is unavailing. As Plaintiff says, these medical sources determined that she had "moderate" limitations in her ability to

respond appropriately to supervisors. *See* Doc. #5, *PageID* #s 88, 102. This finding, however, is not on their assessment of Plaintiff's residual functional capacity. Instead, under Social Security policy, the narrative portion of their opinions controls. *See* Program Operations Manual System (POMS) DI 25020.010.B.1. It is there, in their narratives, that they both concluded that Plaintiff could "interact w[ith] others on a superficial level." (Doc. #5, *PageID* #s 88, 102).

Even if this restriction is not accurately portrayed in the ALJ's RFC finding, it is entirely consistent with the unskilled jobs the ALJ relied on. *See* Dictionary of Occupational Titles §§ 323.687-014, 369.687-018, 780.684-010 (rating the "People: 8-Taking instructions-Helping" requirement as "Not significant"). The Regulations also take notice that unskilled jobs, like the jobs at issue here, "relate to working with things (rather than data or people)." 20 C.F.R., Pt. 404, Subpt. P., App. 2, § 201.00(i).

Accordingly, for all of the above reasons, Plaintiff's Statement of Errors lacks merit.

### IT IS THEREFORE ORDERED THAT:

1. The ALJ's decision issued on August 26, 2014 is affirmed; and

2. The case is terminated on the Court's docket.


September 1, 2017 _____          *s/Sharon L. Ovington* _____
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge